IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STATON HOLDINGS, INC.<br>d/b/a STATON WHOLESALE<br>d/b/a STATON CORPORATE &<br>CASUAL<br><br>     **Plaintiff,**<br><br>VS.<br><br>HILTON APPAREL GROUP a division<br>of RAWLINGS SPORTING GOODS<br>COMPANY, INC. and TIM CRONIN<br><br>     **Defendants.** | Civil Action No. 3:07-CV-0383-BD |

**Defendant Tim Cronin's Reply Brief in Support of Motion to
Dismiss Plaintiff's First Amended Original Complaint**

**TO THE HONORABLE COURT:**

Defendant Tim Cronin files this Reply in support of his motion to dismiss Plaintiff's First

Amended Original Complaint for lack of personal jurisdiction.

## I.    PLAINTIFF'S EVIDENCE FAILS TO MAKE OUT
A PRIMA FACIE CASE FOR JURISDICTION AGAINST CRONIN

When a court resolves a personal-jurisdiction challenge without an evidentiary hearing,

uncontroverted allegations in the complaint will be taken as true, and conflicts between the

parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a

prima facie case for personal jurisdiction exists. *Felch v. Transportes Lar–Mex SA de CV*, 92

F.3d 320, 325 n.13 (5th Cir. 1996). A careful review of the evidence will demonstrate that

Cronin has unequivocally controverted the material allegations in the First Amended Complaint

and that Plaintiff has not adduced squarely controverting affidavits sufficient to make out a prima

facie case against Cronin.

***The allegations***.   The parties agree that Cronin participated in one meeting in Plaintiff's

office in Dallas, Texas, before Plaintiff and Defendant Hilton Apparel Group began to perform

under their new business arrangement.  *E.g.*, *Cronin's App. 6, ¶ 16 (Docket #19-2)*.   Plaintiff is

artfully vague, however, on the crucial issue of whether Cronin made the alleged representation

that Plaintiff would have the right to return Hilton product at that meeting.    Instead of

unequivocally alleging that fact, Plaintiff alleges:

> At that meeting, and in subsequent meetings and over the
> telephone, the topic of year-end returns was discussed.  Plaintiff
> Staton made it clear at that meeting and at all times subsequent that
> Staton would not purchase HILTON product unless it could return
> unsold product.  Defendant Tim CRONIN agreed to Staton's right
> to return HILTON product, and based on his agreement, Staton
> proceeded forwarded and ordered HILTON Product.

*Pl.'s First Am. Compl. ¶ 6 (Docket #9)*.   Did Cronin make the alleged misrepresentation in the

Dallas meeting or not?  The allegation is vague, as is the repetition of the allegation in paragraph

15.

***Cronin's evidence***.   Cronin denies under penalty of perjury that he agreed that Plaintiff

could return unsold Hilton product during the Dallas meeting:

> At no time during that meeting did I ever agree, suggest, or imply
> that Staton Holdings would ever be allowed to return goods it
> received from Hilton Apparel Group.  In fact, Staton Holdings
> representatives asked whether Hilton would take merchandise
> back, and I did not agree that Hilton would do so.  I made it
> perfectly clear that Hilton has no agreements with its vendors to
> buy back any merchandise.

*Cronin's App. 6, ¶ 16 (Docket #19-2)*.   In his prior declaration, he further affirmed that he told

Plaintiff in telephone conversations that "Hilton Apparel Group's position was that its sale of

sportswear products to Staton Holdings, Inc. would be final and that Staton Holdings, Inc. would

have no right to return any products for a refund."  *Cronin's First App. 6, ¶ 16 (Docket #5)*.

***Plaintiff's evidence***.   Plaintiff does not unequivocally contradict Cronin's testimony quoted above, which strongly implies that Plaintiff cannot do so.   Lea Robinson does not mention Cronin at all.   *Pl.'s App. 1-2 (Docket #23).*   Plaintiff's president is just as vague as Plaintiff's First Amended Complaint as to when and how Cronin made the alleged misrepresentations.   After averring that Cronin was present at the Dallas meeting (to the best of his knowledge), Staton attests:

> Additionally, follow-up telephone conversations occurred.   I made clear at all times that Staton would not purchase Hilton product unless it could return unsold product.   Defendant Tim Cronin agreed to Staton's unqualified right to return Hilton product, and based on his agreement, which was never contradicted or withdrawn by him or anyone on behalf of him or Defendant Hilton, we proceeded forward and ordered a shipment of Hilton Product[.]

*Pl's App. 3, ¶ 4*.   If Cronin had made the alleged misrepresentation in Texas, during the meeting, certainly Plaintiff would have adduced evidence to contradict Cronin's denial of that fact.   Plaintiff's failure to do so should lead the Court to draw the inference that Cronin did not in fact make the alleged misrepresentation while physically present in Dallas.

This leaves the telephone conversations in which Cronin allegedly made the misrepresentation that Hilton Apparel Group would refund Plaintiff's money if it ever wanted to return Hilton product.   Of course, Cronin denies that he ever made such representations.   *Cronin's First App. 6, ¶ 16 (Docket #5).*   But if the Court concludes that Plaintiff has raised a fact issue on that point with its vague affidavit from Edward Staton, *Pl.'s App. 3, ¶ 4*, this is still not enough to make out a prima facie case for personal jurisdiction.   Plaintiff continues to rely on overruled authority that fraudulent statements received in Texas over the phone can support specific jurisdiction in Texas.   *Pl.'s Response 7-8 (Docket #22).*   The *Memorial Hospital System* case was disapproved by the Texas Supreme Court in *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 888, 791-92 & n.81 (Tex. 2005), as Cronin pointed out in his Motion to

Dismiss.  *Cronin's Mot. to Dismiss 6 (Docket #19).*  Moreover, the Texas Supreme Court held in

*Michiana* that

> changes in technology have made reliance on phone calls obsolete
> as proof of purposeful availment.  While the ubiquity of "caller
> ID" may allow nonresidents to know a caller's telephone number,
> that number no longer necessarily reveals anything about the
> caller's location.   If jurisdiction can be based on phone
> conversations "directed at" a forum, how does a defendant avail
> itself of any jurisdiction when it can never know where the other
> party has forwarded calls or traveled with a mobile phone?

*Id*. at 791.   In this case, Cronin has adduced evidence that he never knew where Plaintiff's

representatives were located during any of his telephone conversations with them.  *Cronin's*

*First App. 6, ¶ 16 (Docket #5)*; *Cronin's App. 7, ¶ 17 (Docket #19-2)*.   Thus, his alleged

fraudulent representations during telephone conversations do not manifest purposeful availment

of the privilege of doing business in Texas even if the Court construes Plaintiff's evidence as

supporting such an allegation.

## II.      NEITHER GENERAL NOR SPECIFIC JURISDICTION OVER CRONIN IS PROPER

Plaintiff does not seem to contest Cronin's contention that he lacks sufficient minimum

contacts with Texas to permit the exercise of general personal jurisdiction over him.  *See*

*generally Pl.'s Response 5-12*.   Cronin does not have any of the usual indicia of general

jurisdiction in Texas, such as ownership of property or maintenance of any addresses or

employees in Texas. *Cronin's App. 5*.  His occasional trips to Texas over the last ten years do

not rise to the level of substantial, continuous, and systematic contacts as necessary to support

general jurisdiction; even if they were, Cronin's declaration establishes the application of the

fiduciary-shield doctrine to those contacts. *E.g.*, *Cronin's App. 5, ¶ 9.*

Plaintiff's contention that its allegation of fraud against Cronin serves to defeat the fiduciary-shield doctrine with respect to specific jurisdiction is contrary to the holdings of several cases.   The case of *Valley Dynamo, L.P. v. Warehouse of Vending & Games*, 168 F. Supp. 2d 616 (N.D. Tex. 2001), is particularly instructive.  Valley Dynamo (which had an office in Texas) furnished goods to Warehouse and then sued Warehouse for nonpayment.  *Id*. at 618. Valley Dynamo also sued two Warehouse employees, who were Missouri residents, for fraud, alleging that they had "made promises and representations by telephone that WVG would not go out of business and that it would continue to do business with plaintiff."  *Id*. at 618, 620.  Even though the plaintiff supported its allegations against the individual defendants by affidavit, the district court held that the fiduciary-shield doctrine still applied to protect those defendants from jurisdiction in Texas.  *Id*. (adding that "the exchange of telephone calls is insufficient to be characterized as purposeful activity invoking the benefits and protections of Texas's laws"). Applying the holding of *Valley Dynamo* to this case, the Court should hold that the fiduciary-shield doctrine protects Cronin from the assertion of specific personal jurisdiction and that Plaintiff is relegated to seeking relief from Hilton Apparel Group itself in this lawsuit in Texas. *See also Burchfield v. Stein*, No. 3:01-CV-2529-G, 2002 U.S. Dist. LEXIS 3233, at \*18-20 (N.D. Tex. Feb. 27, 2002) (applying fiduciary-shield doctrine in favor of nonresident who allegedly communicated with plaintiffs "by telephone, email, and regular trips to Texas").

Plaintiff's continued reliance on the principle that corporate officers are personally liable for their own torts, even if committed in the course of their employment, misses the mark.  *See Pl.'s Response 7*.  The question on Cronin's Motion to Dismiss is not whether Cronin is personally liable to Plaintiff for fraud.  The question is whether Cronin has purposefully established minimum contacts with Texas to make himself amenable to personal jurisdiction in

Texas.  Liability and jurisdiction are two different inquiries.  *Saktides v. Cooper*, 742 F. Supp. 382, 386 & n.4 (W.D. Tex. 1990).  Whether or not Cronin is ultimately found to have committed fraud, he has a due-process right to have that determination made in a state with which he has minimum contacts.  Under the fiduciary-shield doctrine, Texas is not such a state.

### III.   FAIR PLAY AND SUBSTANTIAL JUSTICE WEIGH AGAINST THE PROPRIETY OF PERSONAL JURISDICTION

Plaintiff complains that Cronin has not detailed the burdens that defending himself in Texas will entail.  The burdens are obvious—the cost of travel between Illinois and Texas, the cost of meals and lodging during trial and any necessary depositions, and the time that will be taken away from Cronin's business during the extra travel time that will be necessitated as compared to a trial in Illinois.  Although perhaps not as extreme as the burdens that would be placed on more remote defendants, these burdens are significant and should be considered in the fair-play calculus.

More important in the assessment of fair play in this case, however, is whether it furthers any state's "fundamental social policies" for states to exercise personal jurisdiction over the individual citizens of their sister states in cases like these.  The modern economy is less localized than ever before, and corporations routinely send their employees all over the country to further their corporate interests.  The employees obey, but not out of any desire to take advantage of the privilege of doing business in those remote forums—indeed, such travel is often more of a burden than a privilege.  Does any state really want its residents exposed to the threat of being haled into some far-flung jurisdiction based solely on the employee's business trips to the forum in service of his or her corporate employer?  Such a rule is not consistent with sound public policy.  As one court stated the matter:

---

> From a policy perspective, it would offend traditional notions of fair play and substantial justice to force employees who have occasion to do business by telephone or mail with any number of given States, to require that they defend lawsuits in those States in their individual capacity based on acts performed not for their own benefit, but for the benefit of their employer.

*Saktides*, 742 F. Supp. at 387; *see also Bergenholtz v. Cannata*, 200 S.W.3d 287, 297 (Tex. App.—Dallas 2006, no pet.) (Texan had to sue its California lawyers in California because, as a matter of fair play, California's interest in regulating its licensed attorneys' conduct was at least as great as Texas's interest).  Fair play is satisfied by imputing the employee's contacts to the corporate employer and requiring the employer to answer for it in the forum state—it is unnecessary and unfair to hale the individual employee into a remote forum as well.

Moreover, Plaintiff's interest in convenient and effective relief in this case is not injured by holding that Cronin is not susceptible to personal jurisdiction in Texas.  Defendant Hilton Apparel Services has answered without contesting personal jurisdiction.  Plaintiff has sued Hilton for breach of contract, which (assuming arguendo that Texas law applies) carries with it a right to recover attorneys' fees.  TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 *et seq.* (Vernon 1997 & Supp. 2006).  Thus, if Plaintiff's claim is valid, it may be made completely whole, including its attorneys' fees, solely by its claim against Hilton.  If Plaintiff seriously wishes to press its claim for a windfall of punitive damages against Cronin for his alleged fraud, the Court should require Plaintiff to do so in a jurisdiction where the location of the suit will not offend basic fair play.

## IV.   CONCLUSION AND PRAYER

The Court should dismiss all claims against Defendant Tim Cronin because Texas cannot constitutionally exercise personal jurisdiction over him in this case.

---

**Wherefore, premises considered**, Defendant Tim Cronin prays that the Court dismiss Plaintiff's First Amended Original Complaint as to him for lack of personal jurisdiction, award him his costs of court, and grant him all other and further relief to which he may show himself justly entitled.

Respectfully submitted,

By:      */s/ Larry W. Johnson*
        **RAMONA MARTINEZ**
        Texas Bar No. 13144010
        rmartinez@cowlesthompson.com

        **LARRY W. JOHNSON**
        Texas Bar No. 00796835
        ljohnson@cowlesthompson.com

        **GREGORY J. LENSING**
        Texas Bar No. 00787896
        glensing@cowlesthompson.com

**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 4000
Dallas, TX 75202
(214) 672-2000
(214) 672-2020 (Fax)

Attorneys For Defendants Hilton Apparel
Group, A Division of Rawlings Sporting Goods
Company, Inc. and Tim Cronin

---

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2007, a true and correct copy of the foregoing document has been forwarded to counsel for Plaintiff, Mr. Christopher M. McCaffrey, Law Offices of Christopher McCaffrey, 14275 Welch Road, Dallas, Texas 75244, through the electronic case filing system of the U.S. District Court for the Northern District of Texas, Dallas pursuant to Local Rule 5.1(d).

*/s/ Larry W. Johnson*
**Larry W. Johnson**
**Gregory J. Lensing**